In re Grand Jury Subpoenas Duces Tecum addressed to **CORRADO BROTHERS, INC.**

In re Grand Jury Subpoenas Duces Tecum addressed to **EASTERN STATES CONSTRUCTION.**

In re Grand Jury Subpoenas Duces Tecum addressed to **FONTANA BROS. & SONS, INC.**

In re Grand Jury Subpoenas Duces Tecum addressed to **J. T. WARD & SON CONTRACTORS, INC.**

In re Grand Jury Subpoenas Duces Tecum addressed to **BRANDYWINE CON-STRUCTION CO., INC.**

In re Grand Jury Subpoenas Duces Tecum addressed to **GEORGE & LYNCH, INC.**

Misc. Nos. 123–128.

United States District Court,
D. Delaware.

Nov. 30, 1973.

Ralph F. Keil, U. S. Atty., and David B. Hooper, Asst. U. S. Atty., Wilmington, Del., for the Government.

Andrew G. T. Moore, II, and Joseph A. Calvarese, Jr., of Killoran & Van Brunt, Wilmington, Del., for Corrado Brothers, Inc., Eastern States Construction and Fontana Bros. & Sons, Inc.

William Poole, of Potter, Anderson & Corroon, Wilmington, Del., for J. T. Ward & Son Contractors, Inc.

Daniel F. Wolcott, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for Brandywine Construction Co., Inc. and George & Lynch, Inc.

## OPINION

LATCHUM, Chief Judge.

The petitioners in these proceedings are contractors who have moved to quash subpoenas duces tecum addressed to them by a grand jury of this district investigating alleged violations of federal law. Corrado Bros., Inc. ("Corrado"), Eastern States Construction Co. ("Eastern"), Fontana Bros. & Sons, Inc. ("Fontana"), and J. T. Ward & Son Contractors, Inc. ("Ward") were each served with two subpoenas duces tecum which required them to produced certain corporate documents listed on Schedule A [1] by November 14, 1973 and to produce additional documents listed on Schedule B [2] by November 21, 1973. Each of these petitioners has moved to quash both subpoenas.

Brandywine Construction Co., · Inc. ("Brandywine") and George & Lynch, Inc. ("George") stand in a slightly different posture in that the subpoenas served on them on October 13, 1973 required them to produce all the documents on Schedules A and B by November 7, 1973. These two petitioners thereafter entered into an agreement with the United States Attorney to turn over five categories of documents on November 7, 1973, ten additional cate-

1. Schedule A:
 1. General Ledgers.
 2. General Journals.
 3. Cash Disbursements Journal.
 4. Cash Receipts Journal.
 5. All written communications or records of oral communications with contractors, subcontractors, vendors, suppliers, architects, public officials, and authorities, and public utilities.
 6. Cancelled checks and check stubs.
 7. Stock Transfer book.

2. Schedule B:
 1. Contracts and copies of contracts and any additions thereto.
 2. Subcontracting Agreements and Purchase Orders.
 3. Vouchers.
 4. Paid Bills.
 5. Invoices.
 6. Billings.
 7. Records of payment for all materials, supplies and Equipment rental.

8. Record of equipment rental, leases and purchase agreements.
9. Requisitions for payment from separate contractors and subcontractors and payment breakdowns.
10. All other requisitions, invoices and estimates.
11. Records of permit and license fees.
12. Payroll records.
13. Retained copies of payroll tax returns.
14. Retained copies of income tax returns.
15. Purchase Journals.
16. Accounts Payable Ledgers.
17. Accounts receivable ledgers.
18. Bids, solicitations for bids, and worksheets prepared in connection therewith.
19. Bank deposit slips.
20. Bank Statements.
21. Corporate Minutes.
22. Corporate Charter and Certificate of Incorporation.
23. Financial Statements.
24. Copies of any audits performed.

gories on November 14, 1973, fifteen more categories on November 21, 1973 and to turn over the remainder, if later requested by the United States Attorney. Brandywine and George in entering into this agreement with the United States Attorney specifically reserved their right to object to producing documents until delivered. Although the first five categories of documents were produced on November 7, 1973, Brandywine and George now move to quash the subpoenas with respect to the undelivered items.

The similarity of the subpoenas served on each petitioner enables the Court to consider the motions together.

Basically, each petitioner alleges (1) that the subpoenas are so broad and sweeping as to require the production of all company records for the stated years which would seriously disrupt and perhaps even stop business operations, and (2) that because no reference was made to the nature of the grand jury investigation there has been no showing that the documents sought are relevant and hence the subpoenas constitute an unreasonable search and seizure prohibited by the Fourth Amendment.

In addition, Corrado, Eastern and Fontana allege that the time for production is unreasonably short to permit the documents to be assembled and delivered. Corrado and Eastern also allege that since they believe the investigation relates to the Division of Highways of the Delaware Department of Highways and Transportation ("Highway Department") they contend much of the material sought is totally irrelevant because only a minor portion of their business deals with the Highway Department.

At the hearing, the Government represented in open court that the grand jury was investigating specific allegations of "kickbacks" and "corruption" involving the Highway Department. The Government also claimed, based on previous experience with similar investigations, that since there are a variety of ways to generate cash, the investigation necessarily must encompass all phases of the petitioners' businesses and not just those phases dealing with Highway Department projects. In answer to the petitioners' claims that their businesses would be seriously disrupted, the Government pointed out that the records for the current accounting year were expressly excluded and that the records required to be produced would be accessible to the petitioners upon reasonable notice.

Historically and of necessity, grand juries have very broad investigative powers through the use of subpoenas duces tecum. Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919).[3] However, the reach of a subpoena duces tecum is not without limit. It may be so broad and sweeping that it violates the Fourth Amendment's prohibition of unreasonable searches. Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652 (1906). In addition, Rules 17(c), F.R.Crim.P., provides that a court may modify a subpoena if compliance would be unreasonable or oppressive. Hence, the key to the validity of a subpoena lies in its "reasonableness".[4] Although courts have not established a definitive set of rules to assist in determining "reasonableness", three interrelated requirements appear critical: (1) that the subpoena command only the production of materials relevant to the investigation; (2) that the subpoena specify the materials to be produced with reasonable particularity; and (3) that the subpoena command production of materials covering only a reasonable period of time. United States v. Gurule, 437 F.2d 239, 241 (C.A. 10, 1970).

---

3. For a detailed history of the grand jury, see United States v. Smyth, 104 F.Supp. 283 (N.D.Cal.S.D.1952).

4. The Grand Jury's search for probable cause has no general limits except those of reasonableness on the entirety of the situation being pursued. Schwimmer v. United States, 232 F. 2d 855, 862 (C.A.8, 1956).

■ As stated above, the Government asserts that the grand jury is investigating specific allegations of "kickbacks" and "corruption" involving the Highway Department and contractors who do business with the Department. A critically relevant element of such an investigation is to find where and how valuable consideration is generated in the subpoenaed companies which could be passed on to a public official. Hence, the class of items which reasonably relate to an accounting of the valuable assets of the contractors meet the first requirement of being relevant to the investigation.

Clearly, stock transfer books [5] and accounting records [6] fall within that class. In addition, materials which reflect on the accuracy of the accounting records [7] are also within that class. Included in these materials are the contracts, subcontracts, purchase orders and additions thereto with *anyone,* not just those relating to Highway Department projects, since cash for kickbacks can be readily generated by padding the contractors' accounting records relating to a totally unrelated party who is in no way alleged to be involved with any impropriety. Such accounting activity on the part of the contractors would go undetected by the grand jury if the non-Highway Department contracts were excluded, hence they too are relevant to the investigation.

Finally, estimates [8] and bids, solicitation for bids, and work sheets prepared in connection therewith [9] are vitally relevant to the investigation dealing with a transfer of valuable consideration because they allow a grand jury to compare the economics of a totally private transaction against similar dealings with public officials.

■ A second class of reasonably relevant materials includes those materials which are likely to reveal directly the nature of the transfer to a public official of any valuable hidden assets uncovered by the first class of materials. Corporate minutes [10] reflect the planned activity of the contractors and therefore are naturally in the second class. All written communications or records of oral communications with public officials and authorities [11] are also in the second class since they relate to direct communications between potential principals.

However, all other written communications or records of oral communications with contractors, subcontractors, vendors, suppliers, architects and public utilities [12] ("private party communications") are not so clearly relevant as the other materials included in the second class. They cannot reasonably be expected to reflect the planned activities of the contractors as is the function of the corporate minutes. They are not records of conversations with potential principals, since there is no allegation by the Government that any third parties are within the ambit of the investigation. However, it is highly likely that included in the "private party communications" are documents concerning Highway Department projects; the very subject of the grand jury investigation.

While there is no allegation by the Government that any of the contractors, subcontractors, vendors, builders, architects or public utilities who communicated with the subpoenaed contractors are involved with any impropriety, the fact that the subject matter of some of their communications relates to the subject of the grand jury investigation is a sufficient ground for finding those limited communications relevant to the subject investigation.

---

5. Item 7 of Schedule A.

6. Items 1, 2, 3, 4 and 6 of Schedule A and Items 7, 9, 12, 15, 16, 17 and 23 of Schedule B.

7. Items 1, 2, 3, 4, 5, 6, 8, 10, 11, 13, 14, 19, 20 and 24 of Schedule B.

8. Item 10 of Schedule B.

9. Item 18 of Schedule B.

10. Item 21 of Schedule B.

11. Item 5 of Schedule A.

12. Item 5 of Schedule A.

On the other hand, private party communications which do not relate to Highway Department projects have not been shown by the Government to have the nexus needed to establish some minimal ground for judging them relevant. The *communications* concerning non-Highway Department projects are distinguished from the non-Highway Department *contracts* and accounting material concerning non-Highway Department contracts. The latter are needed to reflect on the integrity of the subpoenaed contractors' own accounting records. The former are not.

Of course, the private party communications not relating to Highway Department projects may reflect on the integrity of non-subpoenaed contractors, subcontractors, vendors, suppliers, architects and public utilities, but their integrity has not been questioned. Also, it is possible these communications might contain an important scrap of information needed to tie a public official to a kickback, or they might even reveal a conspiracy between a number of heretofore unsuspected parties. In that sense these communications might be of interest to the investigation. However, that reasoning carried to its logical extreme, places no limits on the scope of materials subject to grand jury investigation. No document no matter how remote from the nature of an investigation, would be spared seizure on the basis that it *might* possibly contain important information. It is just this type grand scale dragnet approach which Justice Holmes condemned when he said:

> "It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up. . . . Some ground must be shown for supposing that the documents called for do contain it [evidence] . . . and the ground and the demand must be

reasonable." Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924).

While Justice Holmes was speaking about a search by an agency under statutory authority, his rationale is equally applicable here when the scope of investigation of a constitutionally convened grand jury is balanced against a constitutional right of a person against an unreasonable search and seizure.

Thus, the "private party communications" not related to Highway Department projects do not pass the first requirement of the test for reasonableness —specifically no reasonable ground has been shown for supposing that these records may contain relevant information.

■ This is not to say that there can never be a situation wherein all corporate records are shown to be relevant and subject to call by a grand jury subpoena.[13] But the Government must make some minimum showing that the materials sought are somehow relevant to the grand jury's investigation of an offense falling within its jurisdiction. See In re: Grand Jury Proceedings Schofield, 486 F.2d 85 (C.A. 3, 1973) and In re Grand Jury Subpoena Duces Tecum, etc., 203 F.Supp. 575, 578 (S.D.N.Y.1961).

■ The subpoenas also called for production of the corporate charters and certificates of incorporation.[14] These materials, while public records and easily obtainable through proper channels, appear totally irrelevant to this grand jury investigation.

In summary then, all the items in the subject subpoena meet the relevancy requirement of the reasonableness test except the request for all written communications or records of oral communications with contractors, subcontractors, vendors, suppliers, architects and public utilities not relating to Highway Department projects and the request

---

13. "The fact that all of the records are demanded does not in and of itself make the subpoena unreasonable or oppressive." Application of certain Chinese Family B. & D.

Ass'ns., 19 F.R.D. 97, 100 (N.D.Cal.S.D. 1956).

14. Item 22 of Schedule B.

for the corporate charters and certificates of incorporation.

 This Court must next determine whether the subpoenas meet the second requirement of reasonableness by specifying the relevant items with reasonable particularity. The particularity requirement may be considered as having two prongs: first, particularity of description so that a person attempting to exercise a subpoena may in good faith know what he is being asked to produce; and second, particularity of breadth so that a person in complying with a subpoena in good faith is not harassed or oppressed to the point that he experiences an unreasonable business detriment.

As to the first prong, the language of the subpoena on its face appears sufficiently particular and sufficiently descriptive so that the materials requested may be readily identified. There is no ambiguity as to what is being demanded and the contractors have not come forward with any showing of ambiguity.

 As to the second prong, the contractors have uniformly asserted that the subpoenas are burdensome. Corrado asserts by affidavit that at least 25 drawers of documents would have to be produced, Eastern has at least 20 drawers, Fontana has at least 30 drawers, Ward has approximately 50 file drawers, Brandywine has approximately 64 drawers and George has approximately 185 file drawers. However, mere volume alone is not a sufficient ground to quash a subpoena. It is but one factor toward a showing that the contractors' businesses, denuded of the requested material, would be forced into a seriously detrimental business position. While the contractors suggest in these motions that the subpoenas would disrupt their businesses to such an extent that they might not be able to operate, no showing other than the report of the volume of file drawers involved, was presented to support this claim.

The Ward Company did submit an affidavit by George H. Brittingham which classifies the documents of the Ward Company into three categories:

"(a) Records of completed contracts which are retained for a reasonable period of time and then destroyed in accordance with Company policy.

(b) Records of contracts which have been completed within recent weeks which files and records must be referred to frequently in order to answer inquiries, obtain figures for purposes of comparison, cost estimates, etc.

(c) Files of current contracts involving work in various stages of completion. Many of these contracts originated before June 30, 1973 (the subpoenas call for records 'for the four most recent fiscal years ending June 30, 1973 or before.') Reference must be made to these files on a daily basis."

 The records in category (a) are evidently not regularly referred to and, hence, would not be seriously missed. The records in category (b) relate to contracts completed in recent weeks. The subpoena specifically excludes materials dated after the fiscal year ending June 30, 1973 and therefore would appear to exclude those materials dated some recent weeks ago. The records in category (c) which are dated before June 30, 1973 may indeed have to be copied, at least in part, since they are apparently referred to on a daily basis. However, a mere suggestion that an undisclosed portion of the total records requested may have to be copied for convenience sake is a long way from showing harassment and oppression to the point necessary to induce this Court to quash a subpoena.

 Only in the most extreme case of a clear showing of unreasonableness, of Government abuse of power, will the Court be induced to quash an otherwise valid grand jury subpoena on the basis it was overly burdensome. Petition of Borden Co., 75 F.Supp. 857, 863 (N.D. Ill.E.D.1948). No such showing was made here, particularly in view of the Government's offer to make the sub-

poenaed records readily available to the contractors.

▉▉▉ The final requirement of the reasonableness test is that a subpoena command production of records covering only a reasonable period of time. The period of time should bear some relation to the subject of the investigation. In comparison to Hale v. Henkel, 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652 (1906) where a subpoena requiring a company to produce records from the date of its organization was condemned, this Court finds that the four to five year period covered by the present subpoena is reasonably related to the investigation.

▉▉▉ An additional ground for quashing the subpoenas was raised by Corrado, Eastern and Fontana. They assert that the time for production is unreasonably short to permit the documents to be assembled and delivered. This argument must also be rejected. First, the burden of showing impossibility of performance rests heavily on the subpoenaed parties, and no evidence was supplied by either movant to support their allegations. Second, whatever showing may have been made is necessarily weakened by the fact that additional time has passed while the Court has considered the contractors' motions.[15]

Although this Court has attempted to structure its rationale in the form of a reasonableness test, it must be realized that after all relevant considerations are evaluated the Court is left with what is essentially a subjective judgment. That judgment, based on the above discussion, is that the motions to quash should be denied except for the corporate charters, the certificates of incorporation and written communications or records or oral communications, with contractors, subcontractors, vendors, suppliers, architects and public utilities not relating to Highway Department projects.

The subpoenas issued to Brandywine and George literally require all books, records and documents of the contractors including but not limited to the documents listed in Schedules A and B. There has been no showing by the Government as to what additional materials are to be included by this broad language and no showing as to the relevancy of any additional materials. Hence, the Court will modify the Brandywine and George subpoenas to be limited to the items particularly listed in those subpoenas as otherwise modified.

▉▉▉ Since the original date of return for all materials has passed, the Court, pursuant to the authority given in Rule 17(c), F.R.Crim.P., will also modify the subpoenas to now require a later production date for all contractors.

An order will be entered in accordance with this opinion.

---

15. At the hearing, the Court expressly directed the contractors to continue to make preparations to deliver the requested materials in the event the Court should rule against them.