See also, D.C., 600 F.Supp. 1534.

**In re GRAND JURY SUBPOENA DUCES TECUM SERVED ON ALLIED AUTO SALES, INC.**

**In re GRAND JURY SUBPOENA DUCES TECUM SERVED ON WHEELS AUTO SALES, INC.**

**In re GRAND JURY SUBPOENAS DUCES TECUM SERVED ON Pasquale MANOCCHIO, Joseph Voccola, and Bel-Air Motors, Inc.**

Misc. Nos. 83–118–S, 83–107–S and 83–108–S.

United States District Court, D. Rhode Island.

Oct. 18, 1983.

Donald Burley, Dept. of Justice, Washington, D.C., James O'Neil, Asst. U.S. Atty., Providence, R.I., for plaintiff.

John Tramonti, Jr., Providence, R.I., for defendant Allied Auto Sales, Inc.

William A. Dimitri, Providence, R.I., for defendant Wheels Auto Sales, Inc.

Kevin McKenna, Providence, R.I., for defendant Bel-Air Motors, Inc., etc.

## MEMORANDUM AND ORDER

SELYA, District Judge.

These petitions, individually and collectively, place in issue the validity of various subpoenas duces tecum served on behalf of the government in furtherance of an ongoing grand jury inquiry into certain alleged malefactions in the used-car business. The grand jury is investigating, among other things, the possibility that some or all of the petitioners may have violated the odometer provisions of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1991, and committed mail or wire fraud, 18 U.S.C. §§ 1341 and 1343. While several separate subpoenas are involved, they share common characteristics. The petitioners are all persons (some natural, some corporate) to whom such subpoenas have been addressed; they have, without exception, filed motions to quash. Although each set of motions bears the idiosyncratic flair so precious to the veteran litigator, all of the motions are, at bottom, functionally equivalent. Response to the subpoenas has been stayed by agreement of the parties pending resolution of these motions. The matter has been fulsomely briefed, and was argued in open court on August 31, 1983. Decision was reserved pending submission of supplemental briefs (now received).

Turning to the motions themselves, the petitioners have proffered a salmagundi of grounds upon which they claim entitlement to an order quashing the subpoenas. First, the petitioners aver that the subpoenas violate their Fifth Amendment privilege against self-incrimination. Second, the petitioners contend that the subpoenas do not meet applicable Fourth Amendment tests. Finally, the petitioners claim that the production requests of the subpoenas are onerous and overly broad. The government demurs on all counts.

### I.

Before embarking on yet another journey into the by-ways of the Fifth Amendment privilege against self-incrimination as applied to business and corporate records, prudence demands that the court reflect upon the monition of the Supreme Court in *Fisher v. United States*, 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976), to "adhere to the view that the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information.' *United States v. Nobles*, 422 U.S. 225, 233 n. 7 [95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141] (1975)." The court emphasized in *Fisher* that the privilege go the person, not to the records.

It is well settled that the subpoena of business records implicates the Fifth Amendment only when those records are possessed by the individual who created them. *Fisher v. United States*, 425 U.S. at 399, 96 S.Ct. at 1575; *United States v. Doe*, 628 F.2d 694, 696 (1st Cir.1980). If the documents were prepared by another party, or if the documents are corporate records, the custodian cannot resist a subpoena, even if the records contain information incriminating to him. *United States v. Doe*, 628 F.2d at 696. The Court in *Fisher* stated that the custodians of corporate documents are required to produce the documents, "despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor." 425 U.S. at 411, 96 S.Ct. at 1581. And, if further testimonial authentication is necessary, the custodians may be granted limited immunity. *Curcio v. Unit-*

*ed States*, 354 U.S. 118, 124, 77 S.Ct. 1145, 1149, 1 L.Ed.2d 1225 (1957).

■ The Court of Appeals in *Doe* noted that "a sole proprietor or practitioner whose business records are subpoenaed by the grand jury enjoys Fifth Amendment protection against the compulsion of testimony inherent in the act of submitting the requested documents to the grand jury, but not against the acquisition or use of the contents of the records." 628 F.2d at 695. *See also In re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051 at 1057 (1st Cir. 1980). Therefore, the government may subpoena the records if it grants the witness use immunity for the authentication of other testimonial information that could be implied from the witness's compliance with the subpoena. *United States v. Doe*, 628 F.2d at 695; *In re Grand Jury Proceedings (Martinez)*, 626 F.2d 1051 at 1057.

■ In order to be granted use immunity, the individual seeking protection should submit an affidavit which states that he is a sole practitioner or proprietor who prepared and maintained the requested records for use in his business. *United States v. Doe*, 628 F.2d at 696. To gain even the limited privilege afforded by the decided cases, the custodian of records must demonstrate that the records he possesses are those of his sole proprietorship; and further, that he is the author of the records.

■ The government maintains, however, that even this restricted Fifth Amendment privilege against self-incrimination vanishes with regard to records required by law to be kept. In effect, as to such records, the government would embargo even the shallow safe harbor of *Doe*. In the instant case, records required by 15 U.S.C. §§ 1988, 1990d, 1990f, and 49 C.F.R. § 580.7 are apparently subject to the subpoenas. The government's point is not without support in precedent. Historically, there has been no protection of records required by law to be kept. Some seven

decades ago, the Supreme Court stated in *Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911):

"The principle [allowing no Fifth Amendment privilege] applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transaction which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained."

Since the decision in *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, *reh. den.* 335 U.S. 836, 69 S.Ct. 9, 93 L.Ed. 388 (1948), the policy affording no protection to writings required to be kept by law has become known as the "required records doctrine." *See Marchetti v. United States*, 390 U.S. 39, 55, 88 S.Ct. 697, 706, 19 L.Ed.2d 889 (1968). Later Supreme Court decisions have characterized *Shapiro* as embodying three factors to be considered.[1] They include:

1. That the records subpoenaed are the kind of records the witness customarily keeps; and

2. That the records subpoenaed have acquired "public aspects"; and

3. That the requirement to keep the records be imposed as to "an essentially non-criminal and regulatory area of inquiry" rather than to a "selective group inherently suspect of criminal activities."

*See, e.g., Marchetti v. United States*, 390 U.S. at 57, 88 S.Ct. at 707. In the instant case many of the requested documents do fall into the category of required records in that they are regular business records which have been kept in contemplation of public viewing in an area of inquiry (used car sales) not permeated with criminal statutes. *Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). These records do not pertain to an "inherently suspect" activity,[2] and they have ac-

---

1. These "factors" are just that; they do not comprise requirements to be met in every case.

2. In reaching this conclusion, the court is mindful that aficionados of the "one-liner" specie of

quired the requisite "public aspects." They are, therefore, subject to grand jury production and, to the extent (if at all) that other documents may be implicated, it is the record-keeper's burden, under *Doe*, to come forward with the required affidavit in lieu of production (whereupon the government is obligated, if the pre-conditions of *Doe* and *Martinez* are met, to grant the limited use immunity). While affidavits have been filed by petitioners Manocchio and Voccola, and by a corporate movant, none meets the requirements of *Martinez*. For example, no such affiant identifies the authorship of the records. Should appropriate affidavits be filed, and the pre-conditions of *Martinez* hereafter be met, the court expects that the government will fully comply with its *Martinez* obligations. But, from the material presently before the court, the Fifth Amendment does not demand nullification of any of the subject subpoenas.

## II.

■ Some of the petitioners (Pasquale Manocchio, Joseph Voccola and Bel-Air Motors, Inc.) loose a veritable barrage of claims asserting putative constitutional privilege with regard to privacy expectations and rights against search and seizure. The Supreme Court, in *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), acknowledged that Fourth Amendment rights do apply to the compulsory production of documents. The test is not, as suggested by the petitioners, a mirror image of that which would be applied to a search warrant; rather, the controlling standard is "reasonableness." *Id.* at 76, 26

S.Ct. at 379. The Court in *Hale* specifically adjured any ruling that an examination of the books of a corporation, if duly authorized by act of Congress, would constitute an unreasonable search and seizure within the reach of the Fourth Amendment.[3] *Id.* at 77, 26 S.Ct. at 380.

With regard to petitioners' insistence that the requests for records constitute an "unreasonable seizure," the Supreme Court has held, in analogous circumstances: "It is clear that a subpoena to appear before a grand jury is not a 'seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome." *United States v. Dionisio,* 410 U.S. 1, 9, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973).

■ No matter how viewed, the instant subpoenas do not invidiously implicate Fourth Amendment rights, nor do they impermissibly trample on any legitimate or protectable privacy expectations. These contentions, in sum, are bootless. To the extent that these arguments are merely alternatively-stated complaints as to the overall "reasonableness" of the subpoenas, that area of contention is dealt with in Part III, *post.*

## III.

All of the petitioners challenge the particularity with which the requests are made, the reasonableness of the periods of time indicated, and the breadth of the subpoenas. In *United States v. Gurule,* 437 F.2d 239 (10th Cir.1970), *cert. denied sub nom. Baker v. United States,* 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971), the

---

humor have long tickled the public fancy with thinly-veiled aspersions directed at used-car salesmen, *e.g.,* the caricatures of a major-party Presidential candidate in the 1968 campaign, emblazoned with the legend: "Would you buy a used car from this man?" Yet, mere public skepticism as to the ethical standards or practices (or the lack thereof) associated with an admittedly legitimate business does not, no matter how vituperative or widespread, brand the occupation as "essentially criminal" or "inherently suspect" for *Marchetti* purposes.

**3.** In the case of *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed.

614 (1946), the Court further explicated the applicability of the Fourth Amendment to subpoenas duces tecum. There, the Court stated, "the Fourth [Amendment], if applicable [to the production of corporate records] at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one of demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." 327 U.S. at 208, 66 S.Ct. at 505.

court identified three criteria for a valid grand jury subpoena duces tecum:

    1. The subpoena may command only the production of things relevant to the investigation; and

    2. specification of things to be produced must be made with reasonable particularity; and

    3. production of records covering only a reasonable period of time may be required.

*Id.* at 241. *See generally* C. Whitebread, *Criminal Procedure: An Analysis of Constitutional Case and Concepts* (1980), at 381.

In applying these criteria, and in assessing both unreasonableness and burden on the petitioners, it must be remembered that grand juries have consistently been allowed wide latitude in their investigations. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). The district court in *In re Grand Jury Subpoenas Duces Tecum (M.G. Allen),* 391 F.Supp. 991, 1000 (D.R.I.1975) aptly stated, *"Only in the most extreme case of a clear showing of unreasonableness, of Government abuse of power,* will the Court be induced to quash an otherwise valid grand jury subpoena on the basis it was overly burdensome ..."* (emphasis added) (quoting *In re Grand Jury Subpoena Duces Tecum Addressed to Corrado Bros., Inc.,* 367 F.Supp. 1126, 1132 (D.Del.1973)).

■ In the case at bar, the subpoenas fulfill all three criteria mandated by *Gurule.* The government has outlined the relevance of the requested documents to the grand jury's investigation into the putative violations of odometer regulations by petitioners or their employees. Moreover, the government has specified the things to be produced with a considerable degree of particularity in each subpoena. Likewise, the period covered by the subpoenas, in each instance from July 1, 1978 to the present, cannot be held to be unduly vexatious or arbitrary. The period is definite, current, and relatively short; automobile dealers are in any event required by law to retain odometer statements for a period of four years. *See* 15 U.S.C. § 1990d and 49 C.F.R. § 580.7. Finally, although compliance will be no cake-walk, none of the writs can fairly be characterized as constituting an undue burden.

The court finds, therefore, that the subpoenas here at issue, albeit wide-ranging, do not make requests that are overly broad or burdensome. They are reasonable on their face, and as applied to the circumstances of the probe. They seek documents with a reasonable degree of particularity. From reading the commands for production contained therein, the petitioners can easily discern the identity of the books and records sought by the grand jury.

### IV.

■ Petitioners contend that the subpoenas duces tecum are unlawful in part because they *require* a certified statement to be submitted when requested documents are not provided. The court agrees that the government may not unilaterally mandate such statements in answer to these subpoenas. To that extent, each subpoena will be deemed modified. In so ordering, however, the court notes that the witness, in responding, should indicate what documents named in the subpoena are missing;[4] and, if the witness wishes to claim a Fifth Amendment privilege with regard to certain documents which he maintains are privileged, he must list those documents.

---

**4.** Rule 17(c) of the Federal Rules of Criminal Procedure provides that a subpoena may command a person to produce documents and papers requested by the subpoena. The Note to subdivision (c) of Rule 17 provides that Rule 17 is substantially the same as Rule 45(b) of the Federal Rules of Civil Procedure. The 1970 Amendment to Rule 45, Fed.R.Civ.P., indicates that the scope of discovery through a subpoena is the same as that applicable to the civil discovery rules generally. By reason of an analogy to Rule 34(b) Fed.R.Civ.P., it can be argued that Fed.R.Crim.P., Rule 17(c) requires that the witness must respond with respect to each item or category (or if privilege is claimed with regard to any item or category, that part would have to be specified).

This particular procedure, which is described in the subpoenas presently before the court, was upheld by the Supreme Court in *United States v. Fleischman*, 339 U.S. 349, 363, 70 S.Ct. 739, 746, 94 L.Ed. 906 (1950):

> On the other hand, the burden of the affirmative was not an oppressive one for respondent to undertake; the relevant facts are peculiarly within her knowledge. She was called upon merely to introduce evidence as to what steps she took after receiving the subpoena, or, if she took no action, any evidence tending to excuse her omission. Respondent does not lose the presumption of innocence that surrounds the defendant in a criminal prosecution.

█ Petitioners also object to the command contained in the subpoenas requiring the recipient to construe the words "and" as well as "or" either disjunctively or conjunctively so as to bring any document within the scope of the subpoena which might otherwise be understood to be outside its scope. The court finds this imperative to be unduly restrictive and deserving of deletion, and orders that each subpoena be deemed to be modified accordingly.[5]

### V.

While a plethora of tangential arguments not specifically discussed herein have been raised by one or more of the petitioners, all of them are insubstantial. Each such contention is rejected as devoid of merit.

It is this court's determination that the subpoenas duces tecum here at issue are, except in the minor respects noted above, beyond reproach. Accordingly, the instant motions to quash are denied, and the subpoenas, as modified herein, shall stand. They shall be returnable at such reasonable time(s) as the government shall hereafter specify in writing to counsel for each movant, pursuant to the existing informal stay agreement.

5. Any request which commands a witness who may also be a grand jury target to construe a subpoena in alternative modes runs the risk of

involving the discretionary mental processes of the witness sufficiently to run afoul of Fifth Amendment privilege.