# Supreme Court of the Navajo Nation

**Peter MacDonald Sr., and Wanda MacDonald,**
**Appellants,**
v.
**The Navajo Nation, ex rel.,**
**Robert R. Rothstein, et al.,**
**Appellees.**
**Decided November 8, 1990**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Samuel Pete, Esq., Shiprock, Navajo Nation (New Mexico), for the Appellants; and Robert R. Rothstein, Esq., Santa Fe, New Mexico, for the Appellees.

Opinion delivered by TSO, Chief Justice.

This is an appeal from orders of the Window Rock District Court, made pursuant to 2 N.T.C. § 1982, denying motions to quash investigative subpoenas and requiring Peter MacDonald Sr. and his wife, Wanda MacDonald, to produce certain documents. The appeal is accepted pursuant to 7 N.T.C. § 801(b).

## I. THE CASE BEFORE THE DISTRICT COURT

In March of 1989, the Navajo Tribal Council enacted legislation creating the Office of Special Prosecutor and providing powers and authority for that official to undertake civil and criminal action against certain public officials where they have "committed a violation of any federal or state criminal law or any law or regulation of the Navajo Nation, or committed any action upon which the Navajo Nation may have a cause of action." 2 N.T.C. § 2021. That legislation, which we call the Special Prosecutor Act, is designed to deal with official misconduct in public office.

When the Attorney General of the Navajo Nation "receives information sufficient to constitute grounds to investigate," he must undertake a preliminary investigation. If he finds there are "reasonable grounds to believe that further investigation or prosecution is warranted," he then has the option of handling it himself, referring it to the Office of the Prosecutor, or having some other official of the Navajo Nation Department of Justice take action. If the Attorney General finds that no official of the Department of Justice can handle the mat-

ter "without resulting in personal, financial, or political conflict of interest," then he must apply for the appointment of a special prosecutor. 2 N.T.C. § 2021.

The Special Prosecutor Act also established the "Special Division of the Window Rock District Court," which is composed of three judges. 2 N.T.C. §§ 291-292. It hears the Attorney General's applications for the selection, appointment, compensation, and jurisdiction of the special prosecutor. 2 N.T.C. §§ 2021(f), 2022.

When appointed by the Special Division of the Window Rock District Court, the special prosecutor has "full power and independent authority" to exercise criminal prosecution functions of the Attorney General and the Office of the Prosecutor. 2 N.T.C. § 2023(a). That includes the power to obtain the production of documents or compel testimony by subpoena and to petition the courts to issue subpoena enforcement orders. 2 N.T.C. § 1982.

On March 31, 1989, the Special Division entered its order appointing the law firm of Rothstein, Bennett, Daly, Donatelli & Hughes as the Special Prosecutor. The court fixed the jurisdiction of that firm, authorizing it to undertake criminal or civil actions relating to "(i) violations of the Navajo Nation Ethics in Government Law, (ii) violations of the election laws of the Navajo Nation, and (iii) violations of any other Navajo law." The order specifically mentioned "criminal misconduct associated with the purchase of the Big Boquillas Ranch or acceptance or solicitation of payments or other considerations for personal gain," and the targets of criminal or civil actions were "any current or former tribal officials listed in the Act at 2 N.T.C. § 2021(b)." *In Re Appointment of Special Prosecutor of the Navajo Nation*, No. WR-SD-01-89 (Window Rock Dist. Ct. March 31, 1989) .

On June 15, 1989, the Special Prosecutor issued a subpoena duces tecum addressed to Peter McDonald, Sr. [sic] and Wanda Clere McDonald [sic], commanding them to meet with Ed Staffell, Investigator for the Special Prosecutor, to "discuss matters concerning the ... investigation" and to produce certain documents. The documents to be produced were listed in an Exhibit "A" to the subpoena, and the introductory paragraph of the exhibit indicates they were those "relating to an American Express credit card." The exhibit then listed eleven categories of documents to be produced, including checking and money market account records, savings account records, certificates of deposit, loans, safety deposit box records, drafts and money transfers, credit card records, meeting records (regarding meetings with fifteen named individuals), and telephone records. The categories of meeting records included desk calendars, personal diaries, appointment schedules, and itineraries. While the scope of the subpoena appears to be limited to "an American Express credit card," it broadly called for the production of a wide range of records.

On June 21, 1989, the Special Prosecutor commenced a subpoena enforcement action under 2 N.T.C. § 1982. It named Peter MacDonald Sr., Wanda MacDonald and others as respondents, and the petition on file recites a "good

faith belief" the respondents "may have engaged in criminal conduct," and that they possessed unprivileged information and documentation necessary for an investigation. The petition recited that the MacDonalds were served with a subpoena duces tecum on June 15, 1989, but they "failed and refused to produce any of the documents listed in Exhibit 'A' to the Subpoena."

On June 22, 1989, the court entered an order to show cause upon the petition, and a hearing was held upon it on July 21, 1989. On July 10, 1989, the MacDonalds made a motion to quash the subpoena on six grounds.

On August 25, 1989, the district court made amended findings of fact, conclusions of law and an order, requiring the MacDonalds to "completely comply" with the investigatory subpoena within fifteen days. That order addressed only three objections of the motion to quash — service of process, sovereign immunity, and self-incrimination — reserving the other three for later resolution if the parties were unable to resolve objections to the scope and breadth of the subpoena.

When the parties were unable to resolve those differences the court conducted another hearing on September 13, 1989. The court also held a supplemental hearing by telephone conference call on September 29, 1989, and had telephonic discussions with counsel on September 29, 1989.

On September 29, 1989, the court entered an order denying the MacDonalds' motion to quash, and it gave them until 5:00 p.m., on October 6, 1989, to fully and completely comply by producing the documents recited in the subpoena. The order dealt with issues of the overbreadth and burdensomeness of the subpoena. This appeal followed.

An action to enforce an investigative subpoena is civil in nature, and the jurisdiction and scope of authority of the courts is governed by statute, which provides as follows:

> The Office of the Prosecutor shall have the authority to require the production of books, papers and other documents and may issue subpoenas to compel the attendance and testimony of witnesses. If any person shall refuse to obey any subpoena as issued or shall refuse to testify or produce any books, papers or other documents required by the subpoena, the Office of the Prosecutor may petition any court of the Navajo Nation to issue any appropriate order to enforce the subpoena.

2 N.T.C. § 1982.

The issues raised in the appeal are as follows:

1. Was the investigatory subpoena overbroad and therefore invalid?

2. Was the subpoena to Peter MacDonald Sr. barred by the Navajo Sovereign Immunity Act?

3. Given the pendency of criminal charges against Peter MacDonald Sr., should the district court be permitted to enter an order enforcing the subpoena?

# II. OVERBREADTH

Investigatory or administrative subpoenas are a modern development, and they are associated with the creation of agencies of the executive branch of government. The Special Prosecutor wants the Court to consider his investigations as "the functional equivalent of a Grand Jury proceeding." The United States Supreme Court has likened executive branch agencies to the grand jury. *Hannah v. Larche*, 363 U.S. 420, 448 n.29 (1960); *United States v. Powell*, 379 U.S. 48, 57 (1964). This is an unfortunate comparison, because a major function of a grand jury is to protect criminal suspects from abuses of prosecutorial discretion. However, we must use the analogy as a foundation for our approach to the problem of an overbroad subpoena. A court may refuse to enforce a subpoena to produce documents (the subpoena duces tecum) if it is overbroad, unreasonable, oppressive, or a "fishing expedition." 81 Am. Jur. 2d *Witnesses* §§ 17, 22 (1976). The usual procedure to challenge a subpoena duces tecum is to move the court to quash, vacate, or modify it. *Id.* at § 22. The general rule is that the subpoena duces tecum should describe the documents in such a way that the witness can identify them without a prolonged or extensive search. *Id.* at § 17.

In *United States v. Powell*, the United States Supreme Court dealt with the power of an administrative agency, the Internal Revenue Service, to summon a corporation officer to produce records relating to tax fraud. 379 U.S. 48. The Court established standards for the valid issuance of an administrative summons by the Commissioner of Internal Revenue, a procedure similar to an investigatory or administrative subpoena duces tecum: "He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *Id.* at 57-58.

The court in *In re Grand Jury Subpoena Etc. on Allied Auto Sales* discussed the rule for a valid grand jury subpoena duces tecum to obtain documents relating to odometer, mail or wire fraud. 606 F. Supp. 7 (D.R.I. 1983). In addressing objections to the particularity, time periods, and breadth of subpoenas, that court adopted the rule that there are three criteria for a valid grand jury subpoena duces tecum: 1. The subpoena may command only the production of things relevant to the investigation; 2. Specification of things to be produced must be made with reasonable particularity; and 3. Production of records covering only a reasonable period of time may be required. *Id.* at 12 (citations omitted). In applying these criteria the court considered that "grand juries have consistently been allowed wide latitude in their investigations." *Id.*

In applying these criteria we find that the relevance of the documents sought by the subpoena duces tecum is set out in the Special Prosecutor's petition for subpoena enforcement. It states that the MacDonalds "may have engaged in criminal conduct" and the subpoena itself shows that the Special Prosecutor deter-

mined that records relating to "an American Express card" were relevant to his investigation. The district court conducted two hearings in open court to hear the arguments of the parties, and the subpoenas were discussed with counsel, during two telephone conference calls. Both the MacDonalds and the court had ample opportunity to hear the Special Prosecutor's explanations of why the requested documents were relevant, and the trial court file and transcript of proceedings show that the MacDonalds were under criminal investigation. While there was a great deal of quibbling about the identification of the documents to be produced, the findings of the district court in its two orders gave a finer definition of which documents fall within the scope of its order to comply. The time period covered by the subpoena was from July 1, 1986 to the date of the subpoena, June 6, 1989, or approximately three years. The period of time was reasonable.

The burden of showing the subpoenas were overbroad was upon the MacDonalds. *United States v. Powell*, 379 U.S. at 58. They did not meet that burden by showing that the documents were not relevant to a legitimate purpose, not capable of ascertainment (i.e. they did not know what was sought), or otherwise improper under the overbreath doctrine. They raised many objections, all of which were seriously considered by the trial court. The district court made its determination that the subpoenas were not overbroad, and there is no showing that the court abused its discretion.

The MacDonalds assert that the subpoenas were a prohibited "fishing expedition" and that they constituted "unnecessary harassment." The state decisions they cite in support of that proposition are inapplicable because they address civil discovery proceedings and not criminal subpoenas. More to the point, the MacDonalds raise the rule in *Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298 (1923). (Both parties cited this case as rendered in 1979). There the Federal Trade Commission was undertaking an investigation of unfair competition in violation of the 1914 Act which established it, and the Commission sought all the American Tobacco Company's letters and telegrams for a one-year period, plus reports, contracts, and arrangements with certain corporations by the P. Lorillard Company. *Id.* at 305. The Supreme Court affirmed the trial court's refusal to enforce production of those documents based upon the fourth amendment to the United States Constitution, finding that the Commission had failed to show relevance or materiality and that the petition for production was general and overbroad. *Id.* at 305-307. The language the MacDonalds rely upon is: "Anyone who respects the spirit as well as the letter of the 4th Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire, and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." *Id.* at 305-306 (citations omitted). Fourth amendment search and seizure law has changed a great deal since 1923, and now administrative agencies have a great deal of leeway in obtaining records for their investigations. This case does not apply here because, as shown, the Special Prosecutor satisfied the test of rel-

evance, specificity, and restriction to a reasonable period of time.

We agree with the lower court that the subpoenas were not overbroad.

## III. THE NAVAJO NATION SOVEREIGN IMMUNITY ACT

Peter MacDonald Sr. argues that the records sought by subpoena are immunized by the Navajo Sovereign Immunity Act's prohibition against compelling the testimony of the Chairman of the Navajo Tribal Council by subpoena or otherwise. The applicable provision is 1 N.T.C. § 353(f), as amended in 1988. It provides as follows:

> Neither the Chairman, Navajo Tribal Council, the Vice Chairman, Navajo Tribal Council, nor the delegates to the Navajo Tribal Council may be subpoenaed or otherwise compelled to appear or testify in the Courts of the Navajo Nation or any proceeding which is under the jurisdiction of the Courts of the Navajo Nation concerning any matter involving such official's actions pursuant to his/her official duties.

MacDonald points out that his subpoena calls for meeting records of contacts with five tribal employees during the period between July 1, 1987 and June 6, 1989, and he asserts that because he was officially in office from January of 1987 through March 10, 1989 (the date he was placed on administrative leave by the Navajo Tribal Council), such records fall within the statutory bar.

The Special Prosecutor argues that MacDonald cannot now be considered a tribal official, the records sought are not official records, and that this Court, in *MacDonald Sr. v. Yazzie*, refused to apply the Sovereign Immunity Act as a bar to a prior action against MacDonald. 6 Nav. R. 95 (1989). That decision held that the Act would provide a bar only if the defendant is acting in an official capacity, and the case was returned for a district court finding on that issue. *Id.* at 96. We decide the present question on other grounds.

This is a question of statutory interpretation. We hold that MacDonald cannot invoke the testimonial privilege of 1 N.T.C. § 353(f) because of the provisions of the Sovereign Immunity Act and because of the legislative intent expressed in the Special Prosecutor Act. In searching for the intent of the Navajo Nation Council within its enactments we look to the purpose of the law. The Sovereign Immunity Act is nothing more than a reinforcement of the common law immunity from suit of the Navajo Nation as an independent sovereign. The Act restates that immunity and provides for exceptions to it in certain instances, where fixed procedures are followed. The testimonial privilege of section 353 is within a section which deals with the general principles of sovereign immunity. However, 1 N.T.C. § 354 contains an extensive list of exceptions to general principles of sovereign immunity. Among them are exceptions where a public official exceeds the scope of his or her employment or authority, or there is a suit against the official to compel the performance of a duty under express laws of the United States or the Navajo Nation. 1 N.T.C. § 354(e), (g). The suit here is against Peter

MacDonald Sr. as an individual, and it seeks to discover documents to determine whether he exceeded the scope of his employment or authority by committing criminal acts. It also seeks to compel him to obey a specific public duty, i.e. to produce records which pertain to violations of law. Thus, the Sovereign Immunity Act does not shield MacDonald.

The Sovereign Immunity Act protects the Navajo Nation, the public body, from suit, primarily civil suit. On the other hand the Special Prosecutor Act is a public corruption statute aimed at dealing with official impropriety in violation of either criminal or civil statutes.

The Special Prosecutor Act specifically provides for criminal or civil actions, by either the Navajo Nation Justice Department or the Special Prosecutor, when they are brought against various categories of public officials for violations of federal, state, or tribal law. 2 N.T.C. § 2021. The Act blends well with the Sovereign Immunity Act because it provides a remedy *for the Navajo Nation* against officers or employees who exceeded their authority. The Special Prosecutor Act specifically incorporates the subpoena provisions of 2 N.T.C. § 1982.

Therefore, reading both laws separately and together, we see that it was the intent of the Navajo Tribal Council to provide for precisely this sort of legal procedure, and that there would be no official immunity against it.

One N.T.C. § 354(e) (Sovereign Immunity Act) protects the common law immunities of public officials, but such an immunity would not apply here. In *United States v. Nixon*, the President of the United States attempted to assert a similar form of executive immunity to avoid production of tapes and transcripts of conversations in response to a subpoena by a special prosecutor, and the United States Supreme Court held that due process of law and the need for the fair administration of criminal justice overcame the president's generalized interest in confidentiality. 418 U.S. 683 (1974).

## IV. PENDENCY OF CRIMINAL CHARGES

MacDonald says that because he was charged with "a variety of criminal offenses" on October 11, 1989, an administrative subpoena cannot be used to build a case against him as a criminal defendant. He cites *United States v. Hossbach* in support of his argument. 518 F. Supp. 759 (E. D. Penn. 1980). The Special Prosecutor reads *Hossbach* to suggest that the court was dealing, in dicta, with self-incrimination privilege principles, but he says, "While it is true that Appellant MacDonald, Sr. ('Appellant') is charged in Navajo District Court with a number of criminal offenses, there is no record to suggest that the Special Prosecutor ever intended to utilize the information to 'build' a case against Appellant." This is a rather amazing assertion in light of the petition in the district court record which alleges (at Par. 8, p. 4) that "Petitioners have developed sufficient information to cause them to have a good faith belief that each Respondent [including the MacDonalds] may have engaged in criminal conduct

which would fall within the scope of the jurisdiction of the Special Prosecutor...."
The Special Prosecutor's showing of relevance and materiality hinged upon the
pendency of a criminal investigation. The Special Division of the Window Rock
District Court appointed the Special Prosecutor for the express purpose of under-
taking both criminal prosecutions and civil actions against current or former trib-
al officials. He exercised his power to conduct a criminal investigation when he
issued his subpoenas to the MacDonalds and others, and when he asked the court
to enforce them, he had to show the relevance of the documents he sought to that
mission. The court records show that the MacDonalds were targets of a criminal
investigation and that was the precise purpose of the subpoena directed to them.

In any event, the *Hossbach* holdings regarding the use of administrative sub-
poenas do not support the contentions of either party with respect to the question
of whether an investigatory body may use them to obtain evidence while crimi-
nal charges are pending. *Hossbach* involved conspiracy charges under the
Comprehensive Drug Abuse Prevention and Control Act of 1970, and in that
case Drug Enforcement Administration agents used administrative subpoenas to
obtain various records from a telephone answering service, a telephone compa-
ny, and rental agents. 518 F. Supp. at 763-765. The question raised by the defen-
dants was "the right of the Drug Enforcement Agency (DEA) to obtain evidence
in furtherance of a purely criminal investigation through the use of 'administra-
tive subpoenas' issued pursuant to 21 U.S.C. § 876." *Id.* at 762.

The court first examined the statutory authority for administrative subpoenas
in 21 U.S.C. § 876(a), which provides in pertinent part:

> In any investigation relating to his functions under this subchapter with
> respect to controlled substances, the Attorney General may subpoena wit-
> nesses, compel the attendance and testimony of witnesses, and require the
> production of any records (including books, papers, documents, and other
> tangible things which constitute or contain evidence) which the Attorney
> General finds relevant or material to the investigation.

*Id.* at 765.

This is very close in wording to the subpoena authority of the Office of the
Prosecutor and the Special Prosecutor under 2 N.T.C. §§ 1982 and 2023(a). In
*Hossbach*, the court found that the scope of the subpoena power under the
Comprehensive Drug Abuse Prevention and Control Act was much broader than
the powers of other investigative agencies. It also examined the historical fact
that normally only grand juries may compel testimony and the production of doc-
uments in criminal investigations. *Id.* at 766. However, after finding that there
was no constitutional limitation to prohibit the grant of subpoena power to an
executive branch agency to conduct criminal investigations, the court upheld the
use of administrative subpoenas in a criminal drug investigation leading to pros-
ecutions. *Id.* at 767. The concluding statement on the issue is particularly appli-
cable here:

> Strict construction and careful analysis of the statute may be appropriate, but a court may not usurp the legislative function by taking away from the executive branch powers plainly, unambiguously, lawfully and constitutionally granted by Congress.

*Id.* The opinion did not mention the issue of the use of administrative subpoenas while criminal charges are pending, and it overruled a motion to suppress evidence obtained directly and indirectly using them. The court's self-incrimination discussions deal with the situation where testimony is obtained through a grant of immunity. *Id.* at 770.

The relevancy of the *Hossbach* decision is that there the court applied a statute which gave broad investigatory subpoena powers, finding no constitutional prohibition to the activities carried out under it. The subpoena power the Special Prosecutor has under our statute is quite similar. Therefore, 2 N.T.C. § 1982 supports the activities of the Special Prosecutor, and we too are hesitant to usurp the legislative function in granting power to secure evidence through the use of subpoenas.

There is no statute or rule of law which prohibits the Special Prosecutor from conducting a criminal investigation when criminal charges are pending against an individual. The limitations upon his powers are those which generally apply in criminal law, including rights against self-incrimination. Those rights apply whether or not an individual is charged with an offense. Therefore, there is nothing that prohibits the Special Prosecutor from using an administrative subpoena to build a case against a criminal defendant after criminal charges have been filed. The third ground raised by the MacDonalds in their appeal is rejected.

We notice other problems, however. Upon a review of the record of proceedings in the district court, this Court found some serious self-incrimination problems.

This Court will not normally address errors which are not raised by an appellant, nor will we relieve counsel of his obligation to properly and adequately represent his client. However, there are some serious self-incrimination problems with the district court's final orders which we will address. Where it is not clear that an individual has made a knowing and intelligent choice between claiming or waiving a fundamental privilege, and where this Court sees errors to which no exception has been taken and they would "seriously affect the fairness, integrity or public reputation of judicial proceedings," we will act. *Johnson v. United States*, 318 U.S. 189, 198, 200 (1942).

Before reaching the precise problems with the district court orders we will review the evolution of the doctrines of when an individual must produce documents and when the privilege against self-incrimination applies.

The original rule was that of *Boyd v. United States*, where the United States Supreme Court held that an accused in a criminal case could not be forced to produce evidentiary items in the form of private books and papers because of the prohibitions of the fourth amendment to the Constitution of the United States as to the unreasonable searches and seizures, and the self-incrimination prohibition

of the fifth amendment. 116 U.S. 616 (1886). We have the same prohibitions in the fourth and fifth articles of the Navajo Bill of Rights. 1 N.T.C. §§ 4, 5.

In 1976 the law changed. In *Fisher v. United States*, the United States Supreme Court found that the *Boyd* rule had "not stood the test of time," and that the "foundations for the rule have been washed away." 425 U.S. 391, 407, 409.

In order to understand how, if at all, Peter MacDonald's claim that his records and papers, held either by himself or by others, are immune from production because of the pendency of criminal charges, we must examine the overall shift in the law of self-incrimination since the 1886 *Boyd* decision. We are discussing whether the law can require an individual to turn over documentary evidence or it can require others to release documentary evidence held for another. We first turn to documents in the hands of others.

In *United States v. Powell*, the Supreme Court dealt with an Internal Revenue Service subpoena which was directed to the president of a business. 379 U.S. at 49. The Court did not directly deal with a self-incrimination issue, but instead it held that the Internal Revenue Service need not make a showing of probable cause to obtain tax records unless the taxpayer could raise a substantial question that judicial enforcement of a summons would constitute an abuse of court process. *Id.* at 51.

The case of *Couch v. United States* involved another Internal Revenue Service summons, this time directed to business records in the hands of an accountant. 409 U.S. 322, 323, 331 (1973). The Court held that the production of documents did not carry with it the sort of personal testimonial compulsion, extortion of information from the accused himself, or enforced communication by the accused which falls within the prohibition against self-incrimination. *Id.* at 328-329.

In *Fisher v. United States*, the Court went on to hold that a tax summons directed to an attorney in order to require the production of his client's records was enforceable and not violative of the stricture against self-incrimination. 425 U.S. 391, 402. The reasoning, again, was that the fifth amendment protects against compelled self-incrimination and not the disclosure of private documentary information. *Id.* at 401. However, the Court did reserve the issue of whether there were any special problems of privacy when the subpoena asked for a personal diary. *Id.* at 401 n.7. In sum, the government can require disclosure of documents in the hands of third persons (with some exceptions related to the law of privilege) because such only requires the production of evidence and not compelled disclosures directly from the accused or suspected individual.

The decisions regarding obtaining business records, including sole proprietorship business records, also show that there is no violation of the right against self-incrimination when they are the subject of a subpoena. In *Andreson v. Maryland*, the Supreme Court allowed an attorney's business records, obtained by a search warrant, to be introduced against him for a real estate fraud prosecution. 427 U.S. 463, 465, 477 (1976). The Court again made the distinction between testimonial disclosures and producing evidence.

> [T]he protection afforded by the Self-Incrimination Clause of the Fifth Amendment 'Adheres basically to the person, not to information that may incriminate him.' Thus, although the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, a seizure of the same materials by law enforcement officers differs in a crucial aspect — the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence.

*Id.* at 473-474 (citations omitted).

In *United States v. Doe*, a grand jury issued subpoenas to obtain business records from a sole proprietorship. 465 U.S. 605, 606 (1984). It sought a wide range of records to investigate a government contract corruption scheme, and the listing of records is very similar to the situation in this case. *Id.* at 607 n.1. The Court held that the act of preparing business records is voluntary and that no compulsion is present when a subpoena demands their production. *Id.* at 610-611. However, the Court upheld lower court findings that since the government had issued "broad-sweeping subpoenas" and could not independently produce evidence of their possession, existence and authentication without a testimonial admission by the defendant, the privilege against self-incrimination applied to the act of production. *Id.* at 612-614. As noted by the Special Prosecutor in his brief, Justice O'Connor concurred with the majority opinion and said "the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind." *Id.* at 618. While the thrust of Supreme Court decisions appears to be approaching such a holding, we are not prepared to conclude that such is the actual state of the law. It is sufficient to note that the Court upheld the production of the contents of the documents recited at footnote 1, but found that the breadth of the subpoena was such that there would be self-incrimination in the act of requiring a testimonial communication from the defendant to prove the existence, possession and authenticity of those documents.

Now we reach the decision in *Doe v. United States*, 487 U.S. 201 (1988). That was a case where a court issued an order compelling the target of a grand jury investigation to authorize foreign banks to disclose account records, without identifying documents or acknowledging their existence. *Id.* at 202. There were 12 forms "relating to 12 foreign bank accounts over which the Government knew or suspected that Doe had control," and when those were rejected as calling for a testimonial disclosure, the Government offered a general revised consent form. *Id.* at 203, 204 n.2 (text of form). The Court held that the contents of foreign bank records are not privileged under the Fifth Amendment because the act of executing the form is not "testimonial." *Id.* at 215. The form did not acknowledge that any account in a financial institution was in existence, and it did not indicate that any account was controlled by the suspect. The form did not identify any relevant bank, and it did not point to hidden accounts which would provide infor-

mation to assist the prosecution in uncovering evidence. *Id.* Therefore, the Court held that the consent directive was not testimonial in nature, and a district court order compelling Mr. Doe to sign it did not violate the privilege against self-incrimination. *Id.* at 218.

The Window Rock District Court order of September 29, 1989 is the one most pertinent to this decision. It requires the MacDonalds to undertake the following acts:

1. Sign all necessary consents and authorizations for the release of the financial and other records sought in paragraphs 1, 2, 4, 6, 7, 8 and 11 of the subpoenas which were served upon them on June 15, 1989;

2. Provide Petitioners with a list of names of all financial institutions which are responsive to the categories in the subpoenas and the cities in which the appropriate branches of each are located; and

3. Produce all records within their current possession, custody or under their control responsive to paragraphs 9, 10 and 11 of the subpoenas served upon them on June 15, 1989.

We are not satisfied that a personal diary or other document which is clearly not a business record may be sought through a subpoena because of the doctrine prohibiting compelled production. Assuming there may be a personal diary or other personal document which may have a protected expectation of personal privacy, the district court must make a further determination of whether any document sought by the Special Prosecutor falls within that rule. The procedure will be for the MacDonalds to raise their objections and then provide the document to the court to inspect *in camera. Fisher v. United States*, 425 U.S. at 401 n.7.

In order to assure that the act of producing the documents demanded in the "broad-sweeping subpoena" will not require the MacDonalds to give testimonial evidence of their possession of them, their existence, or their authentication and thus violate their privilege against self-incrimination, the district court must make further findings in harmony with *United States v. Doe*, 465 U.S. at 612-614.

The district court must also reexamine the release forms and the requirement to disclose the names and cities of financial institutions in light of a thorough application of *Doe v. United States*, 487 U.S. 201. In particular the court must examine the form approved in the case as well as the manner of its use.

We remand this cause for further proceedings consistent with this opinion.